IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

TRACEY ALLEN BURCH,
      Petitioner,

vs.                                   Case No. 3:09cv118/LAC/EMT

EDWIN G. BUSS,
      Respondent.
_____/

## REPORT AND RECOMMENDATION

This cause is before the court on Petitioner's petition for writ of habeas corpus and supporting memorandum, filed under 28 U.S.C. § 2254 (docs. 1, 2). Petitioner is represented by counsel in this proceeding. Respondent filed an answer and relevant portions of the state court record (docs. 22, 31). Petitioner filed a reply (doc. 29).

The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N. D. Fla. Loc. R. 72.2(b). After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a). It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

I.      BACKGROUND AND PROCEDURAL HISTORY

The relevant aspects of the procedural background of this case are undisputed and established by the state court record (*see* doc. 2 at 2–4; doc. 22 at 1, exhibits).[1] Petitioner was charged in the Circuit Court in and for Okaloosa County, Florida, Case No. 01-95-CFA, with one count of lewd

---

[1] Hereinafter all citations to the state court record refer to the exhibits submitted with Respondent's answer (doc. 22). If a cited page has more than one page number, the court cites to the "Bates stamp" page number.

or lascivious battery (on a person 12 years of age or older but less than 16 years of age), a violation of Florida Statutes § 800.04(4) (Ex. B at 8). The offense conduct occurred between September 1 and October 31, 2000 (*id.*). On December 6, 2001, Petitioner entered a written plea agreement ("Plea Agreement"), pursuant to which he agreed: (1) to plead nolo contendere to the charge, (2) to be sentenced at the court's discretion, and (3) that a factual basis for the plea existed (*id.* at 10–11). On January 15, 2002, the trial court adjudicated Petitioner guilty and sentenced him to fifteen (15) years of imprisonment (*id.* at 118–23, 147–54). Petitioner filed a motion to withdraw his plea (*id.* at 115). Following an evidentiary hearing, the trial court denied the motion (*id.* at 130, 156–79).

Petitioner, through counsel, appealed the judgment of conviction and sentence to the Florida First District Court of Appeal ("First DCA"). On January 29, 2003, the First DCA affirmed the judgment per curiam without written opinion (Ex. E). Burch v. State, 837 So. 2d 965 (Fla. 1st DCA 2003) (Table).

On May 15, 2003, Petitioner filed, through counsel, a motion for post-conviction relief, pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Ex. F at 1–6). The state circuit court summarily denied the motion (*id.* at 237–398). Petitioner appealed the decision to the First DCA. On March 30, 2006, the First DCA affirmed the decision per curiam without written opinion, with the mandate issuing April 17, 2006 (Exs. G, H). Burch v. State, 925 So. 2d 1032 (Fla. 1st DCA 2006) (Table).

On September 14, 2006, Petitioner filed, through counsel, a motion to correct illegal sentence, pursuant to Rule 3.800(a) of the Florida Rules of Criminal Procedure (Ex. J at 1–3). Petitioner filed an amendment to his Rule 3.800(a) motion and simultaneously filed a second Rule 3.850 motion (*id.* at 4–33). The state circuit court summarily denied the motions (*id.* at 44–68). Petitioner appealed the decision to the First DCA. On October 20, 2008, the First DCA affirmed the decision per curiam without written opinion, with the mandate issuing November 6, 2008 (Exs. M, N). Burch v. State, 992 So. 2d 253 (Fla. 1st DCA 2008) (Table).

Petitioner filed the instant federal habeas action on March 23, 2009 (doc. 1). Respondent concedes that the petition is timely (doc. 22 at 2–3).

## II.      STANDARD OF REVIEW

Federal courts may issue habeas corpus relief for persons in state custody pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pub.L. 104-132, § 104, 110 Stat. 1214, 1218-19.  In relevant part, § 2254(d) provides:

> (d)   An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

>> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

>> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254 (2006).

The United States Supreme Court explained the framework for § 2254 review in Williams v. Taylor, 529 U.S. 362, 120 S.  Ct. 1495, 146 L. Ed. 2d 389 (2000).[2]  The appropriate test was described by Justice O'Connor as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Id., 529 U.S. at 412–13 (O'Connor, J., concurring).  The federal habeas court "determining whether [it] should overturn the state courts' rejection of the claim at issue" should "review the highest state court decision disposing of the claim."  Harvey v. Warden, Union Corr. Inst., 629 F.3d 1228, 1237

---

[2] Unless otherwise noted, references to Williams are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

(11th Cir. 2011); *see* Knowles v. Mirzayance, — U.S.—, 129 S. Ct. 1411, 1419, 173 L. Ed. 2d 251 (2009).

Employing the Williams framework, on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal state court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." Lockyer v. Andrade, 538 U.S. 63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003). The law is "clearly established" only when a Supreme Court holding at the time of the state court decision embodies the legal principle at issue. Dicta in opinions is not controlling. Thaler v. Haynes, — U.S. —, 130 S. Ct. 1171, 1173, 175 L. Ed. 2d 1003 (2010); Bowles v. Sec'y for Dep't of Corr., 608 F.3d 1313, 1315 (11th Cir. 2010). A federal court of appeals decision cannot clearly establish federal law for § 2254 purposes, even if its holding is directly on point. Bowles, 608 F.3d at 1316 (citing Renico v. Lett, — U.S. —, 130 S. Ct. 1855, 1866, 176 L. Ed. 2d 678 (2010)).

After identifying the governing legal principle, the court determines whether the state court adjudication is contrary to the clearly established Supreme Court case law. To be entitled to deference, the state court decision need not cite to Supreme Court case law. As the Supreme Court clarified: "Avoiding th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002) (quoting Williams, 529 U.S. at 405–06). If the state court decision is contrary to clearly established federal law, the federal habeas court must independently consider the merits of the petitioner's claim. *See* Panetti v. Quarterman, 551 U.S. 930, 127 S. Ct. 2842, 168 L. Ed. 2d 662 (2007).

If the state court decision is not contrary to clearly established federal law, the federal habeas court must then determine whether the state court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases. The federal court defers to the state court's reasoning unless the state court's application of the legal principle was "objectively unreasonable" in light of the record before the state court. Williams, 529 U.S. at 409; *see* Holland v. Jackson, 542 U.S. 649, 652, 124 S. Ct. 2736, 159 L. Ed. 2d 683 (2004) (per curiam); *cf.* Bell v. Cone, 535 U.S.

685, 697 n.4, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).  An objectively unreasonable application of federal law occurs when the state court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001).  A state court may "decline to apply a specific legal rule that has not been squarely established by [the Supreme Court]" without running afoul of the "unreasonable application" clause. Knowles, 129 S. Ct. at 1419.  Notably, even a state court's incorrect or erroneous application of clearly established law will not warrant federal habeas relief unless it is also objectively unreasonable.  See Schriro v. Landrigan, 550 U.S. 465, 473, 127 S. Ct. 1933, 167 L. Ed. 2d 836 (2007) ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold."); Harrington v. Richter, — U.S. —, 131 S. Ct. 770, 786–87, 178 L. Ed. 2d 624 (2011) ("As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.").

When faced with a state appellate court's summary affirmance of a trial court's decision, the "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it.  See Gill v. Mecusker,  633 F.3d 1272, 1287 (11th Cir. 2011) (citing Harrington, 131 S. Ct. at 786).  The federal court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court.  See Harrington, 131 S. Ct. at 786; see also Gill, 633 F.3d at 1292 (holding that the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an

unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  As with the "unreasonable application" clause, the Supreme Court applies an objective test.  Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (holding that a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding.").  The "unreasonable determination of the facts" standard is only implicated to the extent that the validity of the state court's ultimate conclusion is premised on unreasonable fact finding.  See Gill, 633 F.3d at 1292.

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); see, e.g., Miller-El, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence").  Neither the Supreme Court nor the Eleventh Circuit has interpreted how § 2254(d)(2) and §2254(e)(2) interact in the context of fact-based challenges to state court adjudications.  Cave v. Sec'y for Dep't of Corr., — F.3d. —, 2011 WL 1365021 (11th Cir. Apr. 12, 2011).  However, in a recent Eleventh Circuit decision the court declined to grant habeas relief under § 2254(d)(2), in the context of a state appellate court's summary affirmance, where it found that the validity of the state court decision was not premised on the trial court's unreasonable fact finding, and that the petitioner failed to demonstrate "by clear and convincing evidence that the record reflect[ed] an insufficient factual basis for affirming the state court's decision."  Gill, 633 F.3d at 1292.

Only if the federal habeas court finds that the petitioner satisfied AEDPA, and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims.  See Panetti, 551 U.S. at 953.  The writ will not issue unless the petitioner shows

that he is in custody "in violation of the Constitution or laws and treaties of the United States."  28 U.S.C. § 2254(a).  "If this standard is difficult to meet, that is because it was meant to be."  Harrington, 131 S. Ct. at 786.

III.   EXHAUSTION AND PROCEDURAL DEFAULT

It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner have exhausted available state court remedies, 28 U.S.C. § 2254(b)(1),[3] thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights."  Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 888, 130 L. Ed. 2d 865 (1995) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)).  To satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim.  Duncan, 513 U.S. at 365–66; O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999); Picard, 404 U.S. at 277–78.

The Supreme Court has provided lower court with guidance for determining whether a habeas petitioner has met the "fair presentation" requirement.  In Picard v. Connor, the Court held that, for purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief.  404 U.S. at 277.  In announcing that "the substance of a federal habeas corpus claim must first be presented to the state courts," id., 404 U.S. at 278, the Court rejected the contention in that case that the petitioner satisfied the exhaustion requirement by presenting the state courts only with the facts necessary to state a claim for relief.

---

[3]Section 2254 provides, in pertinent part:

(b)(1)     An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–
      (A)  the applicant has exhausted the remedies available in the courts of the State; or
      (B) (i)  there is an absence of available State corrective process; or
         (ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.
. . . .
(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

Additionally, the Court has indicated that it is not enough that a petitioner make a general appeal to a constitutional guarantee as broad as due process to present the "substance" of such a claim to a state court.  Anderson v. Harless, 459 U.S. 4, 103 S. Ct. 276, 74 L. Ed. 2d 3 (1982).  In Anderson, the habeas petitioner was granted relief by the Sixth Circuit Court of Appeals on the ground that a jury instruction violated due process because it obviated the requirement that the prosecutor prove all the elements of the crime beyond a reasonable doubt.  459 U.S. at 7 (citing Sandstrom v. Montana, 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979)).  The only manner in which the habeas petitioner cited federal authority was by referring to a state court decision in which "the defendant . . . asserted a broad federal due process right to jury instructions that properly explain state law."  Anderson, 459 U.S. at 7 (internal quotation marks omitted).  The Court expressed doubt that a defendant's citation to a state-court decision predicated solely on state law was sufficient to fairly apprise a reviewing court of a potential federal claim merely because the defendant in the cited case advanced a federal claim.  Id., 459 U.S. at 7 and n.3.  Furthermore, the Court clarified that such a citation was obviously insufficient when the record satisfied the federal habeas court that the federal claim asserted in the cited case was not the same as the federal claim on which federal habeas relief was sought.  Id.

Years later, the Supreme Court readdressed the "fair presentation" requirement in Duncan v. Henry, 513 U.S. 364.  The Duncan Court strictly construed the exhaustion requirement so as to mandate that, if state and federal constitutional law overlap in their applicability to a petitioner's claim, the petitioner must raise his issue in terms of the applicable federal right in state court in order to obtain federal review of the issue.[4]  The Supreme Court explained, "[i]f a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal, but in state court."  Duncan, 513 U.S. at 365–66.  More recently, the Supreme Court again focused upon the requirement of "fair presentation," holding that "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert

---

[4] The petitioner in Duncan raised a federal due process claim in his habeas petition, but had raised only a state constitutional claim in his state appeal.  Presented with a state constitutional claim, the state court applied state law in resolving the appeal.  513 U.S. at 366.

it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." Baldwin v. Reese, 541 U.S. 27, 124 S. Ct. 1347, 1351, 158 L. Ed. 2d 64 (2004). In Baldwin, the Supreme Court recognized that "[a] litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" Id., 541 U.S. at 32. This language, while not part of the Court's holding, provides helpful instruction. With regard to this language, the Eleventh Circuit explained in McNair v. Campbell, 416 F.3d 1291 (11th Cir. 2005):

> If read in a vacuum, this dicta might be thought to create a low floor indeed for petitioners seeking to establish exhaustion. However, we agree with the district court that this language must be "applied with common sense and in light of the purpose underlying the exhaustion requirement[:] 'to afford the state courts a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary.'" McNair [v. Campbell], 315 F. Supp. 2d at 1184 (quoting Vasquez v. Hillery, 474 U.S. 254, 257, 106 S. Ct. 617, 620, 88 L. Ed. 2d 598 (1986)). This is consistent with settled law established by the Supreme Court. . . . We therefore hold that "'[t]he exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.'"

416 F.3d at 1302-03 (citations omitted).[5]

The Eleventh Circuit, prior to Duncan, had broadly interpreted the "fair presentation" requirement. After Duncan, however, the Eleventh Circuit has taken a more narrow approach. For example, in Zeigler v. Crosby, the court held that the habeas petitioner failed to "fairly present" his juror misconduct claims to the state courts where his brief to the state appellate court did not refer to the federal constitutional issues raised in his federal habeas petition, and none of the cases cited in his direct appeal discussed the United States Constitution. 345 F.3d 1300, 1307 (11th Cir. 2003). The Eleventh Circuit specifically noted that the section of the petitioner's appellate brief which dealt with juror misconduct contained the words: "Appellant was denied due process and a fair trial. . .

---

[5] In his initial brief before the Court of Criminal Appeals, McNair cited one federal case in a string citation containing other state cases, and in a closing paragraph in his argument that extraneous materials were considered by the jury during deliberations, stated that there was a violation of his rights "protected by the Fifth, Sixth, Eighth[,] and Fourteenth Amendments to the United States Constitution, the Alabama Constitution[,] and Alabama law." McNair v. Campbell, 416 F.3d 1291, 1303 (11th Cir. 2005). The court found that these references to federal law were not sufficient to meet the fair presentment requirement and noted that it was important that the petitioner had never mentioned the federal standards regarding extraneous materials in his brief, but relied on state law for his arguments. Id.

.,'" which could be interpreted as asserting a fair trial claim under the Due Process Clause of the Florida Constitution.  *Id.* at 1308 n.5.  The only cases cited in the discussion of the issue in petitioner's state appellate brief were state supreme court cases that made no mention of the United States Constitution and cited no federal cases.  The court concluded that petitioner's "[c]ursory and conclusional sentence (unaccompanied by citations to federal law), . . . did not present to the Florida courts the federal claim asserted to us."  *Id.*

An issue that was not properly presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, that is, procedurally barred from federal review.  *See* O'Sullivan, 526 U.S. at 839–40, 848; Bailey v. Nagle, 172 F.3d 1299, 1302–03 (11th Cir. 1999).  This court will also consider a claim procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar or default.  *See* Coleman v. Thompson, 501 U.S. 722, 734–35 and n.1, 111 S. Ct. 2546, 2555 and n.1, 115 L. Ed. 2d 640 (1991); Caniff v. Moore, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."); Chambers v. Thompson, 150 F.3d 1324, 1326–27 (11th Cir. 1998) (applicable state procedural bar should be enforced by federal court even as to a claim which has never been presented to a state court); *accord* Tower v. Phillips, 7 F.3d 206, 210 (11th Cir. 1993); Parker v. Dugger, 876 F.2d 1470 (11th Cir. 1990), *rev'd on other grounds*, 498 U.S. 308, 111 S. Ct. 731, 112 L. Ed. 2d 812 (1991).  In the first instance, the federal court must determine whether any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine. Bailey, 172 F.3d at 1303.  In the second instance, a federal court must determine whether the state's procedural default ruling rested on adequate state grounds independent of the federal question.  *See* Harris v. Reed, 489 U.S. 255, 109 S. Ct. 1038, 1043, 103 L. Ed. 2d 308 (1989).  The adequacy of a state procedural bar to the assertion of a federal question is itself a federal question.  Lee v. Kemna, 534 U.S. 362, 122 S. Ct. 877, 885, 151 L. Ed. 2d 820 (2002).  The adequacy requirement has been interpreted to mean that the rule must be "firmly established and regularly followed," Siebert v. Allen, 455 F.3d 1269, 1271 (11th Cir. 2006), that is, not applied in an "arbitrary or unprecedented fashion," Judd v. Haley, 250 F.3d 1308,1313 (11th Cir. 2001), or in a manifestly

unfair manner.  Ford v. Georgia, 498 U.S. 411, 424-25, 111 S. Ct. 850, 858, 112 L. Ed. 2d 935 (1991); Upshaw v. Singletary, 70 F.3d 576, 579 (11th Cir. 1995).

The Eleventh Circuit has set forth a three-part test to determine whether a state court's procedural ruling constitutes an independent and adequate state rule of decision.  Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001).  First, the last state court rendering judgment must clearly and expressly state it is relying on state procedural rules to resolve the federal claim.[6]  Second, the state court's decision on the procedural issue must rest entirely on state law grounds and not be intertwined with an interpretation of federal law.  Third, the state procedural rule must be adequate. Id.  The adequacy requirement has been interpreted to mean the rule must be firmly established and regularly followed, that is, not applied in an arbitrary or unprecedented fashion.  Id.

To overcome a procedural default such that the federal habeas court may consider the merits of a claim, the petitioner must show cause and prejudice or a fundamental miscarriage of justice. Tower, 7 F.3d at 210; Parker, 876 F.2d 1470.  "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim."  McCleskey v. Zant, 499 U.S. 467, 497, 111 S. Ct. 1454, 1472, 113 L. Ed. 2d 517 (1991) (quoting Murray v. Carrier, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645, 91 L. Ed. 2d 397 (1986)).  Lack of counsel or ignorance of available procedures is not enough to establish cause.  Tower, 7 F.3d at 210.  To satisfy the miscarriage of justice exception, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent."  Schlup v. Delo, 513 U.S. 298, 327, 115 S. Ct. 85, 130 L. Ed. 2d 808 (1995).  "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him."  Schlup, 513 U.S. at 327.  Further:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare.  To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial.

---

[6] The federal court should honor the procedural bar even if the state court alternatively reviewed the claim on the merits.  Marek v. Singletary, 62 F.3d 1295, 1302 (11th Cir. 1995); Alderman v. Zant, 22 F.3d 1541 (11th Cir. 1994).

*Id.*

Within this framework, the court will review Petitioner's claims.

IV.    PETITIONER'S CLAIMS

A.    Ground One:  "Petitioner Burch should have been permitted to withdraw his no contest plea."

In Ground One, Petitioner claims his plea was not knowingly and voluntarily entered (doc. 1 at 6; doc. 2 at 6–12).  He contends the trial court erred by denying his motion to withdraw his plea. He asserts his plea was accepted during a "mass" plea hearing, during which other defendants simultaneously entered pleas.  He argues the Supreme Court held in Boykin v. Alabama, 395 U.S. 238 (1969) that the Due Process Clause requires a court accepting a guilty plea to carefully inquire into the defendant's understanding of the plea, so the record contains an affirmative showing that the plea was intelligently and voluntarily entered.  He asserts the plea hearing in his case does not demonstrate that he knowingly, intelligently, and voluntarily entered his plea, because the court failed to inquire (1) whether he knew that the court could sentence him to the maximum penalty of fifteen (15) years, (2) whether he had any preconceived notions regarding the type of sentence he may receive or had been promised a sentence other than the maximum, and (3) whether he had any doubts about his lawyer's abilities to work his hardest for him (doc. 2 at 6–11).  Additionally, the trial court failed to conduct an inquiry as to whether there was a factual basis for the plea (*id.* at 11–12).

Respondent contends Petitioner failed to fairly present his federal claim to the state courts (doc. 22 at 5–8).  Respondent argues Petitioner's motion to withdraw his plea did not challenge the adequacy of the colloquy or the factual basis; instead, he argued that counsel misled him regarding the likelihood of a lesser sentence, counsel had a moral problem with the case, counsel believed he would lose at trial, and counsel told him the judge would be angry if he took depositions. Respondent further contends Petitioner did not present his claims in federal terms in his motion to withdraw his plea.  Additionally, Respondent contends that although Petitioner attempted to raise a federal claim on direct appeal, it was not subject to review because the appellate court reviewed only the decision of the trial court on the claims presented to it, which did not include the instant claims.  Respondent contends under well-established Florida law, in order to raise an issue on appeal

relating to the voluntariness of a plea, the defendant must first present the claim to the trial court in a motion to withdraw plea; otherwise, the claim may be raised in a timely Rule 3.850 motion. Respondent argues Petitioner's presenting his federal claim for the first time in a procedural context in which the merits would not be considered was not proper exhaustion.

In Petitioner's reply, he contends he fairly presented his federal claim in his motion to withdraw plea, in which he alleged his plea was "not entered freely and voluntarily" (doc. 29 at 2–3). He argues this allegation was sufficient to alert the trial court that he was challenging his plea on federal due process grounds.

The state court record shows that after Petitioner was sentenced, he obtained new counsel, Attorney Jonathan Dingus, who filed a motion to withdraw the plea (Ex. B at 115–17). The motion alleged Petitioner's former counsel, Attorney Nickolas Petersen, made several comments to Petitioner prior to entry of the plea which showed that the plea was not freely and voluntarily entered, including:  (1) counsel told him he (counsel) would have a moral problem taking the case to trial, which led Petitioner to believe counsel would not be able to effectively represent him at trial; (2) counsel misled him as to his chances of receiving a sentence below the sentencing guidelines by indicating that Petitioner stood a 50–60% chance of receiving a below-guidelines sentence if he entered a no contest plea with no agreed upon sentence; and (3) counsel indicated to Petitioner he had virtually no chance of prevailing at trial (*id.*).

The trial court held an evidentiary hearing on the motion (Ex. B at 156–79). At the hearing, Petitioner testified that his plea was involuntary due to various deficiencies in Attorney Petersen's representation (*id.* 158–66). Attorney Petersen also testified (*id.* at 166–78). At the conclusion of the hearing, the trial court denied the motion to withdraw the plea (*id.* at 130, 178–79).

Petitioner raised two issues on direct appeal of his conviction. As Issue I, Petitioner argued the trial court abused its discretion by failing to grant the motion to withdraw the plea (Ex. C at 6–13). Petitioner argued the plea colloquy was inadequate because the trial court failed to inquire whether Petitioner understood that the court could sentence him to the maximum penalty of fifteen years, and the court failed to determine whether he had any preconceived notions regarding the type of sentence he may receive (*id.* at 6–8, 12–13). Petitioner argued federal due process required the court to carefully inquire into his understanding of the plea, which the trial court failed to do in his

case (*id.* at 8–9 (citing <u>Boykin v. Alabama</u>, 395 U.S. 238 (1969))).  Petitioner additionally argued the trial court was constitutionally required to determine that the circumstances surrounding the plea reflected a full understanding of the significance of the plea and its voluntariness (*id.* at 10–11). Petitioner argued if the court had done so, the court would have learned that Petitioner believed he would not have had an effective advocate at trial (*id.* at 10–11, 13).

As Issue II, Petitioner argued the trial court committed fundamental error by failing to inquire as to whether there was a factual basis for the plea (Ex. C at 14–16).  Petitioner argued the court's total inquiry consisted of seven questions, and those questions were posed to three other defendants in a "mass plea" (*id.* at 15).  Petitioner argued that, at a minimum, substantial compliance with Rule 3.172 of the Florida Rules of Criminal Procedure was required for a mass plea to be in compliance with the due process clauses of the United States Constitution and the Florida Constitution, but that did not occur in his case (*id.*).  He argued that if the court had inquired as to the factual basis, the court would have been aware of the complexity of the allegations and Petitioner's apprehensions regarding pleading versus going to trial (*id.* at 15–16).

In its answer brief, the State conceded that Petitioner preserved Issue I by presenting his arguments in his motion to withdraw plea (Ex. D at 5).  The State argued Petitioner failed to show that the trial court abused its discretion by determining that Petitioner's plea was knowingly and voluntarily entered (*id.* at 5–8).  As to Issue II, the State argued Petitioner failed to preserve the issue for appeal (*id.* at 8–9).  The State further argued the claim was without merit, because Petitioner failed to show the alleged error was fundamental, that is, that it resulted in manifest injustice (*id.* at 8–10).

The First DCA affirmed the judgment of conviction and sentence per curiam without written opinion (Ex. E).

Petitioner subsequently filed a Rule 3.800(a) motion to correct illegal sentence, in which he raised the same claim he asserted in Issue II on direct appeal, that is, the trial court failed to inquire and receive a factual basis prior to accepting Petitioner's plea (Ex. J at 1–3).  The state circuit court determined that the claim was not properly raised in a Rule 3.800(a) motion; instead it must be presented in a Rule 3.850 motion (*id.* at 45).  The court further determined that the time for Petitioner's filing a Rule 3.850 motion had expired, and none of the exceptions set forth in the Rule

applied (*id.*).   The court additionally concluded the claim was without merit, since the record demonstrated Petitioner stipulated to a factual basis for the plea in the Plea Agreement (*id.*). Petitioner appealed the decision to the First DCA but did not argue this issue in his initial brief (Ex. K).  The First DCA affirmed without written opinion (Ex. M).

Under Florida law, "in order for an argument to be cognizable on appeal, it must be the specific contention asserted as legal grounds for the objection, exception, or motion below." Steinhorst v. State, 412 So. 2d 332, 338 (Fla. 1982).  In order to raise an issue on appeal regarding the voluntariness of a plea, the defendant must first present the claim to the trial court in a motion to withdraw the plea.  *See* Burns v. State, 884 So. 2d 1010 (Fla. 4th DCA 2004); *see also* Robinson v. State, 373 So. 2d 898 (Fla. 1979).  As stated in Burns:

> Appeals following a plea of guilty or no contest are governed by Florida Rule of Appellate Procedure 9.140(b)(2)(A), which provides that, following a plea, a defendant may appeal only those dispositive issues specifically reserved or, if no issues were reserved, the lower court's lack of subject matter jurisdiction; a violation of the plea agreement, if preserved by motion to withdraw the plea; an involuntary plea, if preserved by motion to withdraw the plea; and a sentencing error, if preserved.

884 So. 2d 1010.

Challenges to a guilty plea that are not preserved may be raised in a Rule 3.850 motion.  *See* Fla. R. Crim. P. 3.850(a)(5).  A Rule 3.850 motion must be filed within two years after the judgment and sentence become final, unless it satisfies one of the three exceptions set forth in the Rule.  *See* Fla. R. Crim. P. 3.850(b).[7]

---

[7] Rule 3.850(b) provides, in relevant part:

**Time Limitations.**  A motion to vacate a sentence that exceeds the limits provided by law may be filed at any time.  No other motion shall be filed or considered pursuant to this rule if filed more than 2 years after the judgment and sentence become final in a noncapital case . . . unless it alleges that

(1) the facts on which the claim is predicated were unknown to the movant or the movant's attorney and could not have been ascertained by the exercise of due diligence, or

(2) the fundamental constitutional right asserted was not established within the period provided for herein and has been held to apply retroactively, or

(3) the defendant retained counsel to timely file a 3.850 motion and counsel, through neglect, failed to file the motion.

In <u>Vance v. State</u>, the Florida Fifth District Court of Appeal applied these procedural rules to a case very similar to the instant case.  Defendant Vance filed a motion to withdraw his plea, arguing that his plea was involuntary because he was on medication.  796 So. 2d 1286, 1288 (Fla. 5th DCA 2001).  At the hearing on the motion, Vance testified that the only reason he wanted to withdraw his plea was his hope of obtaining a more lenient sentence than the one to which he had previously agreed.  *Id.*  On direct appeal, Vance argued the plea was involuntary because the colloquy was constitutionally insufficient.  *Id.*  The Fifth DCA affirmed the judgment and sentence because Vance failed to properly preserve the inadequate colloquy argument below and the alleged error was not fundamental.  *Id.*  However, the court's affirmance was  without prejudice to Vance's filing a Rule 3.850 motion challenging the adequacy of the colloquy.  *Id.*

In the instant federal petition, Petitioner presents the same grounds he presented to the First DCA in Issues I and II, only he combines them into one claim.  In the proceedings before the First DCA, the parties did not dispute that the grounds presented in Issue I were preserved, but those presented in Issue II were not.  Further, when Petitioner attempted to present the unpreserved grounds in a Rule 3.800(a) motion, the state court rejected the claim based upon firmly established and regularly followed state procedural rules.  Therefore, the undersigned concludes that only the grounds presented to the First DCA in Issue I on direct appeal were properly exhausted.  The argument presented in Issue II, that is, the trial court's acceptance of the plea without inquiring whether a factual basis existed, was not properly exhausted and is procedurally barred from federal review.[8]  Therefore, the court will proceed to determine whether Petitioner has demonstrated that

---

Fla. R. Crim. P. 3.850(b).

[8] Even if this issue was properly exhausted, Petitioner has failed to demonstrate he is entitled to relief.  Due process requires that a defendant's factual guilt of the crime charged be established.  In a guilty plea situation, this requirement may be satisfied by a defendant's own solemn admission in open court that he is in fact guilty of the offense with which he is charged.  *See* Tollett v. Henderson, 411 U.S. 258, 267, 92 S. Ct. 1602, 1608, 36 L. Ed.2 d 235 (1973).  The purpose of placing the facts on the record is not to establish guilt as a basis for a judgment of conviction, rather it is to aid in the constitutionally required determination that the defendant entered the plea intelligently and voluntarily, because it demonstrates a defendant's recognition that the evidence negates any claim of innocence and that he has nothing to gain by a trial and much to gain by entering a plea.  *See* McCarthy v. United States, 394 U.S. 459, 467, 89 S. Ct. 1166, 1171, 22 L. Ed. 2d 418 (1969).  In the instant case, Petitioner's express stipulation in the Plea Agreement that a factual basis for the charge existed (*see* Ex. B at 11) was sufficient to demonstrate that Petitioner recognized the evidence against him and intelligently and voluntarily decided he had more to gain by entering a plea (namely, the

the state court's adjudication of the exhausted grounds was based upon an unreasonable determination of the facts, or contrary to or an unreasonable application of clearly established federal law.

1.    Clearly Established Federal Law

In order to meet constitutional standards a plea must "represent[ ] a voluntary and intelligent choice among the alternative courses of action open to the defendant." North Carolina v. Alford, 400 U.S. 25, 31, 91 S. Ct. 160, 164, 27 L. Ed. 2d 162 (1970).  The accused must be informed as to the nature of the criminal charges he is facing and the consequences he will face, and he must knowingly waive constitutional rights to which he would otherwise be entitled such as his privilege against self-incrimination and his right to trial by jury.  See Henderson v. Morgan, 426 U.S. 637, 645, 96 S. Ct. 2253, 2258, 49 L. Ed. 2d 108 (1976); Brady v. United States, 397 U.S. 742, 755, 90 S. Ct. 1463, 1472, 25 L. Ed. 2d 747 (1970); Boykin v. Alabama, 395 U.S. 238, 243 & n.5, 89 S. Ct. 1709, 1712 & n.5, 23 L. Ed. 2d 274 (1969).

However,

> [o]ften the decision to plead guilty is heavily influenced by the defendant's appraisal of the prosecution's case against him and by the apparent likelihood of securing leniency should a guilty plea be offered and accepted.  Considerations like these frequently present imponderable questions for which there are no certain answers; judgments may be made that in the light of later events seem improvident, although they were perfectly sensible at the time.  The rule that a plea must be intelligently made to be valid does not require that a plea be vulnerable to later attack if the defendant did not correctly assess every relevant factor entering into his decision.  A defendant is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misapprehended the quality of the State's case or the likely penalties attached to alternative courses of action.

Brady, 397 U.S. at 756–57; see also United States v. Broce, 488 U.S. 563, 572, 109 S. Ct. 757, 763–64, 102 L. Ed. 2d 927 (1989).  The plea colloquy gives rise to a presumption of the voluntariness of the plea.  See Blackledge v. Allison, 431 U.S. 63, 97 S. Ct. 1621, 52 L. Ed. 2d 136 (1977).

---

possibility of a sentence below the maximum) than by going to trial.

When a defendant challenges his plea based upon allegations of ineffective assistance of counsel, the two-prong standard set forth in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), applies.  *See* Hill v. Lockhart, 474 U.S. 52, 58, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985).  To obtain relief under Strickland, Petitioner must establish:  (1) that his counsel's representation "fell below an objective standard of reasonableness," and (2) that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different.  466 U.S. at 688.

The focus of inquiry under the performance prong of the Strickland standard is whether counsel's assistance was "reasonable considering all the circumstances."  *Id.*  "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."  *Id.* at 689. Indeed, the Supreme Court warned about second-guessing professional judgments made by counsel:

> [T]he decision to plead guilty before the evidence is in frequently involves the making of difficult judgments.  All the pertinent facts normally cannot be known unless witnesses are examined and cross-examined in court.  Even then the truth will often be in dispute.  In the face of unavoidable uncertainty, the defendant and his counsel must make their best judgment as to the weight of the State's case.  Counsel must predict how the facts, as he understands them, would be viewed by a court. . . . Questions like these cannot be answered with certitude; yet a decision to plead guilty must necessarily rest upon counsel's answers, uncertain as they may be.  Waiving trial entails the inherent risk that the good-faith evaluations of a reasonably competent attorney will turn out to be mistaken either as to the facts or as to what a court's judgment might be on given facts.  That a guilty plea must be intelligently made is not a requirement that all advice offered by the defendant's lawyer withstand retrospective examination in a post-conviction hearing.

McMann v. Richardson, 397 U.S. 759, 769–70, 90 S. Ct. 1441, 1448, 25 L. Ed. 2d 763 (1970).

In a plea situation, counsel must provide advice "within the range of competence demanded of attorneys in criminal cases."  Hill, 474 U.S. at 56–57 (quoting McMann, 397 U.S. at 771).  Under this standard, representation is ineffective only if counsel commits "serious derelictions" of his duty when advising the accused.  Stano v. Dugger, 921 F.2d 1125, 1150–51 (11th Cir. 1991).  Absent such blatant errors, however, the court should "indulge a strong presumption that counsel's conduct

fell within the wide range of reasonably professional assistance." Yordan v. Dugger, 909 F.2d 474, 477 (11th Cir. 1990). The Eleventh Circuit has commented that "[t]he right to competent plea bargain advice is at best a privilege that confers no certain benefit," because a defendant "may make a wise decision" without assistance of counsel or a "bad one despite superior advice from his lawyer." Wofford v. Wainwright, 748 F.2d 1505, 1508 (11th Cir. 1984) (per curiam). "[C]ounsel owes a lesser duty to a client who pleads guilty than to one who decides to go to trial, and in the former case counsel need only provide his client with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice between [entering a plea] and going to trial." Id. This requires counsel to "offer his informed opinion as to the best course to be followed" and impart "a general knowledge of the possible legal consequences of facing trial" to the defendant. Id. Therefore, a defendant's failure to "correctly assess every relevant factor entering into his decision" does not undermine a validly entered guilty plea. Id. at 1509.

To meet the prejudice prong of the Strickland standard in a plea situation, Petitioner must establish that prove that "counsel's constitutionally ineffective performance affected the outcome of the plea process." Hill, 474 U.S. at 59. Often this analysis hinges upon whether eradication of the error would have led counsel to change his recommendation as to the plea, which in turn generally depends on whether the outcome of a trial would have been substantively different. Id. at 59–60. While counsel can be deemed ineffective under Strickland for failing to provide proper advice during the plea process, Petitioner must demonstrate a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial. See Diaz v. United States, 930 F.2d 832, 835 (11th Cir. 1991); Toro v. Fairman, 940 F.2d 1065, 1068 (7th Cir. 1991). A conclusory, after-the-fact statement that Petitioner would not have pled guilty, without more, is insufficient to establish prejudice under Strickland. See Diaz, 930 F.2d at 835; see also Coulter v. Herring, 60 F.3d 1499, 1504 (11th Cir. 1995) (though Coulter evidenced, through his counteroffer to the state, a willingness to enter into a plea agreement, he offered no further proof to show that he would have accepted the state's plea offer of life without parole absent his lawyers' alleged errors; therefore, Coulter failed to establish any prejudice stemming from counsel's alleged deficient performance); Johnson v. Duckworth, 793 F.2d 898, 902 n.3 (7th Cir. 1986).

2.      Federal Review of State Court Decision

As previously discussed, Petitioner alleged in his motion to withdraw the plea that his former counsel, Attorney Nickolas Petersen, made several comments to him prior to entry of the plea which showed that the plea was not freely and voluntarily entered, including:  (1) counsel told him he (counsel) would have a moral problem taking his case to trial, which led Petitioner to believe counsel would not be able to effectively represent him; (2) counsel misled him as to his chances of receiving a sentence below the sentencing guidelines by indicating to Petitioner that he stood a 50–60% chance of receiving a below-guidelines sentence if he entered a no contest plea with no agreed upon sentence; and (3) counsel indicated to Petitioner he had virtually no chance of prevailing at trial (Ex. B at 115–17).

At the evidentiary hearing on Petitioner's motion to withdraw the plea, the court heard testimony from Petitioner and Attorney Petersen (Ex. B at 156–79).  Petitioner testified Attorney Petersen told him he had a moral problem taking the case to trial, which Petitioner interpreted as meaning Petersen would not put his best foot forward at trial (*id.* at 158).  He said Petersen also told him he would be found guilty and receive the maximum sentence of fifteen years if he went to trial (*id.* at 158, 161–62).  Petitioner stated Attorney Petersen told him the victim and another witness would testify, and since there was no other evidence, he would be found guilty (*id.* at 162). Petitioner said Petersen told him that the judge would get mad if he took depositions and would give him a harsher sentence even if he entered a no contest plea (*id.* at 158–59).  Petitioner testified that while he was in Petersen's office, Petersen looked at his file and realized there was no "computer" evidence against him (*id.* at 160).  Petitioner also testified Attorney Petersen told him there was no particular sentence, and he had a 30/70 or 60/40 percent chance of a downward departure sentence (*id.* at 161, 163, 165).  Petitioner testified that these statements convinced him that Petersen could get him a sentence of probation or below the guidelines (*id.* at 166).  On cross-examination, Petitioner admitted that no one, including Attorney Petersen, the prosecutor, and the judge, promised him a specific sentence (*id.* at 164).  He also admitted that he knew and understood at the time of his plea that there was no agreement as to his sentence (*id.* at 164).  Petitioner admitted the judge

told him he could receive a maximum jail sentence of fifteen years, and he agreed that that was the chance he was taking by entering a plea (*id.* at 164–65).

Attorney Petersen testified he never told Petitioner he had a moral problem that prevented him from taking the case to trial (Ex. B at 167–77).  Petersen testified he advised Petitioner he had virtually no chance of prevailing at trial based upon (1) the victim's statements in her deposition,[9] (2) Petitioner's admission to a fellow school employee that he did what school authorities accused him of doing, namely, having sex with a female student,[10] and (3) Petitioner's admission to Attorney Petersen that he engaged in the conduct of which he was accused (*id.* at 167–77).  Additionally, Petersen stated he always told Petitioner he had a fifty-percent or less chance of receiving a below-guidelines sentence, even though Petitioner wanted him to tell him he was more optimistic about receiving a downward departure (*id.* at 168, 177).  Petersen testified he believed Petitioner's best chance of getting a sentence on the low end of the guidelines or a downward departure sentence was to enter a plea and give the court letters and personal accounts of his life, because he had no prior conviction, and the victim stated in her deposition that neither she nor her mother wanted Petitioner to go to jail (*id.* at 168–69, 173).  Petersen testified he explained to Petitioner that according to the Plea Agreement, the court had complete discretion as to his sentence, from probation all the way up to the maximum (*id.* at 176–77).  He then added:

> Judge, we went over that several times, and he did not like my opinion.  He wanted me to tell him that I was more optimistic on getting a reduced sentence, a downward departure, but I did explain it to him, and I did give him the benefit of my advice, what I thought would happen, and it was his choice to do one—either go to trial or not go to trial.

(*id.* at 177).

---

[9] The state court record includes only a portion of the victim's deposition (*see* Ex. F at 27–41).  In that portion, the victim stated Petitioner penetrated her vagina with his finger and performed oral sex on her.  She also discussed conduct that occurred in Petitioner's bedroom, but she did not provide many details in that portion of her deposition. The record also contains the police report, in which the victim reported that Petitioner penetrated her vagina with his penis in the bedroom (Ex. B at 3).

[10] The transcript of a recorded interview with the fellow employee, Mr. Joel Orlando, and Mr. Orlando's deposition are included in the record (*see* Ex. F at 49–67).

At the conclusion of the hearing, the court found as fact that the only credible assertion by Petitioner was that Attorney Petersen advised Petitioner that, based upon his review of the facts and evidence of the case, Petitioner had virtually no chance of prevailing at trial (Ex. B at 179).  The court assigned no credibility to Petitioner's other assertions (that Petersen told him he (counsel) would have a moral problem taking his case to trial, and Petersen told Petitioner he stood a 50–60% chance of receiving a below-guidelines sentence if he entered a no contest plea with no agreed upon sentence).  The court found that Petitioner was not misled by Attorney Petersen in any way, and Petersen's conduct was appropriate (*id.* at 178–79).  The court concluded that Petitioner was well represented by counsel during the plea process (*id.* at 178–79).  The court further concluded Petitioner's plea was freely and voluntarily entered, and Petitioner was not entitled to withdraw his plea (*id.* at 130, 178).  The First DCA affirmed the decision without written opinion.

As previously noted, to be entitled to deference, the state court decision need not cite to Supreme Court case law.  "Avoiding th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."  Early, 537 U.S. at 8 (citation omitted); *see also* Childers v. Floyd, — F.3d — (11th Cir. 2011) (en banc) ("[A] decision receives AEDPA deference even if the state court fails to cite—or is not even aware of—relevant Supreme court precedent").  Further, when faced with a state appellate court's summary affirmance of a trial court's decision, the "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it.   *See* Gill,  633 F.3d at 1287 (citing Harrington, 131 S. Ct. at 786).  The federal court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court.  *See* Harrington, 131 S. Ct. at 786; *see also* Gill, 633 F.3d at 1292 (holding that the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).

Determinations of credibility are best made by the trial court judge who can assess the demeanor and candor of the witnesses.  Gore v. Sec'y for Dep't of Corr., 492 F.3d 1273, 1300 (11th Cir. 2007) (noting that while reviewing court also gives a certain amount of deference to credibility determinations, that deference is heightened on habeas review) (citing Rice v. Collins, 546 U.S. 333, 341–42, 126 S. Ct. 969, 163 L. Ed. 2d 824 (2006) (stating that "[r]easonable minds reviewing the record might disagree about the [witness'] credibility, but on habeas review that does not suffice to supersede the trial court's credibility determination")); see also Baldwin v. Johnson, 152 F.3d 1304, 1317 (11th Cir. 1998) (citing Marshall v. Lonberger, 459 U.S. 422, 434, 103 S. Ct. 843, 74 L. Ed. 2d 646 (1983) ("Title 28 U.S.C. § 2254(d) gives federal habeas [corpus] courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them.")); Smith v. Kemp, 715 F.2d 1459, 1465 (11th Cir. 1983) ("Resolution of conflicts in evidence and credibility issues rests within the province of the state habeas court, provided petitioner has been afforded the opportunity to a full and fair hearing.").

Petitioner has failed to present clear and convincing evidence to rebut the state court's findings of fact.  Moreover, those findings are supported by the record.  Therefore, this court presumes the following facts:  (1) Attorney Peterson never told Petitioner he (Petersen) would have a moral problem taking his case to trial, (2) Petersen never told Petitioner he stood more than a fifty-percent chance of receiving a below-guidelines sentence if he entered a no contest plea with no agreed upon sentence, and (3) Petersen's advice concerning Petitioner's chances of success if he went to trial (that is, Petitioner had virtually no chance of prevailing at trial) was based upon Petersen's review of the facts and evidence in the case.  In light of the facts concerning Attorney Petersen's performance during the plea process, the state court's conclusion that Petersen did not perform ineffectively during the plea process was not contrary to or an unreasonable application of Strickland.

As to Petitioner's claim that his plea was involuntary because the trial court failed to inquire whether he knew that the court could sentence him to the maximum penalty of fifteen years, whether he had been promised a sentence of less than the maximum, and whether he harbored any doubt as to Attorney Petersen's ability to effectively represent him, the state court could have determined that

the Plea Agreement refuted Petitioner's contentions.   The record includes the written Plea Agreement, which bears Petitioner's signature (Ex. B at 10–11).  By signing the Plea Agreement, Petitioner attested that he read and understood all of its terms.  The Agreement expressly stated Petitioner would be sentenced at the court's discretion (*id.* at 10).  Petitioner acknowledged he understood that the maximum period of imprisonment he could receive was fifteen years (*id.* at 11).  The Agreement stated the sentence would be imposed under the Florida sentencing guidelines; that a minimum sentence would be determined based upon certain factors; and that the court could exceed the minimum sentence and impose up to the maximum (*id.*).  Petitioner expressly reserved the right to request a downward departure from the guidelines (*id.* at 10).  Petitioner also expressly stipulated that a factual basis existed for the charge of sexual activity with a victim older than 12 but younger than 16 (*id.* at 11).  Additionally, Petitioner placed his initial near each enumerated right he was waiving by entering a plea, thereby acknowledging his understanding that he was giving up the following rights:  (1) to plead not guilty, (2) to be tried by a jury, (3) to compel witnesses to come to trial, (4) to be present when witnesses testified against him, (5) to cross-examine witnesses who testified against him, and (6) to appeal all matters relating to the judgment, including the issue of guilt or innocence (*id.*).  Petitioner expressly acknowledged he was satisfied with the advice and services provided by his counsel (*id.*).  Finally, just above Petitioner's signature appeared the following:

> IMPORTANT:  IT IS MY DECISION TO GIVE UP MY RIGHT TO A TRIAL BY JURY.  NO THREATS OR PROMISES HAVE BEEN MADE TO CAUSE ME TO ENTER THIS PLEA.

(*id.*).

The record also includes the transcript of the plea hearing on December 6, 2001, at which Petitioner and three other defendants appeared (Ex. B at 143–45).  The court asked the defendants' attorneys to announce the terms of the plea in each case (*id.* at 143).  Attorney Petersen announced that Petitioner was withdrawing his plea of not guilty and entering a plea of no contest to the crime as charged (*id.*).  He announced that Petitioner's sentence was at the court's discretion, a pre-sentence investigation report would be prepared, and Petitioner would be permitted to remain unincarcerated until sentencing (*id.*).  The attorneys for the other defendants announced the terms of their plea agreements (*id.* at 144).  The court then conducted the following colloquy:

THE COURT: All right. We now have before the court Tracey Burch, Greg Bradley, Mark Freeman, and Charles Morrison.

. . . .

. . . Gentlemen, you have each heard your attorney announce on your behalf the terms and conditions of the plea that you wish to enter at this time and the charges against you before this court. Is it your desire that I accept the pleas on your behalf?

THE DEFENDANTS: Yes, sir.

THE COURT: Your attorney has also filed with the court a written plea agreement which appears to bear your signature. Did you sign the agreement?

THE DEFENDANTS: Yes, sir.

THE COURT: Did you read it before you signed it?

THE DEFENDANTS: Yes, sir.

THE COURT: Did you discuss it with your attorney?

THE DEFENDANTS: Yes, sir.

THE COURT: Do you understand it?

THE DEFENDANTS: Yes, sir.

THE COURT: Did you have any questions about it?

THE DEFENDANTS: No, sir.

THE COURT: Are you satisfied with your attorney?

THE DEFENDANTS: Yes, sir.

THE COURT: Thank you, I will accept the plea on behalf of each of the defendants.

(*id.* at 144–45).

Petitioner's express acknowledgments in the Plea Agreement and his statements in open court constitute evidence that he: (1) understood that the maximum period of imprisonment he could

receive was fifteen years; (2) understood that his sentence would be imposed under the Florida sentencing guidelines; (3) understood that a minimum sentence would be determined based upon certain factors, but the court could exceed the minimum sentence and impose up to the maximum; (4) received no promises to cause him to enter this plea; and (5) was satisfied with the advice and service of Attorney Petersen.  This provided a reasonable basis for the state court to reject Petitioner's claim that his plea was rendered unknowing and involuntary by the trial court's failure to ask if he knew he could be sentenced to the maximum of fifteen years, the court's failure to inquire whether he had been promised a sentence of less than the maximum, and the court's failure to ask whether he had any doubts about Attorney Petersen's ability to effectively represent him.

Finally, with regard to Petitioner's argument that "mass" plea hearings are per se unconstitutional, he has not identified any Supreme Court case holding such and the court is aware of none.  Therefore, he cannot satisfy the standard for habeas relief under § 2254(d)(1) as to this argument.

Based upon the foregoing, Petitioner has failed to show that the state court's rejection of his constitutional challenge to his plea was based upon an unreasonable determination of the facts, or contrary to or an unreasonable application of clearly established federal law.  Therefore, he is not entitled to federal habeas relief on Ground One.

B.      Ground Two: "Defense counsel rendered ineffective assistance of counsel by failing to file a pretrial motion for a statement of particulars."

Petitioner challenges the validity of his plea on the ground that Attorney Petersen failed to seek a statement of particulars (doc. 1 at 6; doc. 2 at 12–18).  Petitioner states the charging document was insufficient as to the date of the crime (doc. 2 at 12–13).  He states the victim told police the crime occurred in September or October of 2000, but she stated during her deposition that it occured in November of 2000 (*id.* at 13).  Petitioner asserts a statement of particulars would have permitted him to pursue an affirmative defense, because he had several alibi witnesses who could have testified regarding his non-contact with the victim during the time she said the crime occurred (*id.*).  Petitioner asserts if counsel had requested a statement of particulars, there is a reasonable probability he would not have entered his no contest plea and would have insisted on going to trial (*id.* at 15).

Petitioner states he raised this claim in his Rule 3.850 motion, but the state court summarily denied the claim (*id.* at 12–13, 15–16).

Respondent concedes Petitioner presented this claim in his post-conviction motion (doc. 22 at 16).  Respondent contends the state court's adjudication of the claim was not contrary to or an unreasonable application of <u>Strickland</u>.

### 1. Clearly Established Federal Law

As previously discussed, when a defendant challenges his plea based upon allegations of ineffective assistance of counsel, the two-prong standard set forth in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984) applies.  *See* <u>Hill</u>, 474 U.S. at 58.  That standard was particularly described *supra*.

### 2. Federal Review of State Court Decision

Petitioner raised this claim as Ground I in his first Rule 3.850 motion (Ex. F at 2–3).  The state court correctly identified the <u>Strickland</u> standard as applicable to Petitioner's claim (*id.* at 238–39).  The state court found as fact that although the victim stated in her deposition that she believed the crime occurred in November of 2000, she told law enforcement that the offense occurred in September or October of 2000 (*see id.* at 238 and referenced attachments).  The court also found that the time period charged in the information was between September 1, 2000 and October 31, 2000, which was consistent with the time period provided to law enforcement by the victim (*id.*).  The court also found that the Plea Agreement clearly demonstrated that Petitioner stipulated to the factual basis for the charge (*id.*).  The court concluded Petitioner failed to satisfy the deficient performance and prejudice prongs of <u>Strickland</u> (*id.* at 238–39).

Rule 3.140(n) of the Florida Rules of Criminal Procedure provides:

> The court, on motion, shall order the prosecuting attorney to furnish a statement of particulars when the indictment or information on which the defendant is to be tried fails to inform the defendant of the particulars of the offense sufficient to enable the defendant to prepare a defense.  The statement of particulars shall specify as definitely as possible the place, date, and all other material facts of the crime charged that are specifically requested and are known to the prosecuting attorney including the names of persons.  Reasonable doubt concerning the construction of this rule shall be resolved in favor of the defendant.

Fla. R. Crim. P. 3.140.  The information charged Petitioner as follows:

> . . . **TRACEY ALLEN BURCH, between September 01, 2000 and October 31, 2000** at and in Okaloosa County, Florida, did unlawfully engage in sexual activity with a person twelve (12) years of age or older, but less than sixteen (16) years of age, to-wit:  **M.M.F., 15** years of age, by **vaginal penetration by, or union with the sexual organ and/or the finger(s) of Tracey Allen Burch**, in violation of Section 800.04(4), Florida Statutes.

(Ex. B at 8).

The record shows that defense counsel was aware of the State's evidence regarding the date the crime occurred.  According to the statement of probable cause and the transcript of the victim's statement to police, the crime occurred on a Friday night in September or October of 2000, when the victim's friend, Joelle Hollenbaugh, drove the victim to Petitioner's home (Ex. B at 2–5, Ex. F at 43).  The statement of probable cause also summarized Joelle Hollenbaugh's interview with police, during which she stated she drove the victim to Petitioner's house on a Friday night in September or October of 2000, and Petitioner dropped off the victim at her (Hollenbaugh's) house at 11:00 p.m. that night (*id.* at 2–5, Ex. F at 75–79).  Additionally, defense counsel deposed the victim (*see* Ex. B at 173), and when asked when the events in question occurred, she responded, "I don't know the exact date.  I would say it was in about, I guess, November of last year.  Sometime around the end of the year.  I don't remember the exact month."  (Ex. F at 31).  However, she additionally stated she remembered that it occurred on a Friday night, when her friend Joelle Hollenbaugh drove her to Petitioner's house, and Petitioner drove her back to Hollenbaugh's house (*id.* at 31, 38–39).  Additionally, Petitioner told defense counsel that he engaged in the acts of which he was accused, thereby indicating he knew the particulars of the offense with which he was charged (Ex. B at 168).  Indeed, Petitioner knew the exact date that the crime occurred, as evidenced by his admission in a letter to the sentencing court that the crime occurred on September 29, 2000 (Ex. F at 133).

Since counsel and Petitioner had the information necessary to prepare any affirmative defenses, Petitioner failed to show that counsel's failure to file a motion for a statement of particulars was unreasonable.  Moreover, Petitioner's assertion that he would not have pleaded guilty had the time of the crime been more particularly described is disingenuous, in light of his

admission that he knew the exact date it occurred.  Therefore, the state court's denial of this claim was not based upon an unreasonable determination of the facts, nor was it contrary to or an unreasonable application of <u>Strickland</u>.

      C.    <u>Ground Three:  "Defense counsel rendered ineffective assistance of counsel by admitting Petitioner Burch's guilt without Petitioner Burch's knowledge or consent."</u>

Petitioner states Attorney Petersen admitted Petitioner's guilt to the media, the prosecution, and the judge by giving an interview to a reporter from the Northwest Florida Daily News, without Petitioner's prior knowledge or consent (doc. 1 at 7; doc. 2 at 18–19).  Petitioner states counsel's conduct forced him to enter a no contest plea (*id.* at 19).

Respondent contends Petitioner did not properly or fairly present this claim to the state courts (doc. 22 at 8–9).  Respondent asserts Petitioner presented the claim as Ground II in his first Rule 3.850 motion in a conclusory fashion, devoid of any factual specifics, and the state court denied it as facially insufficient (*id.*).  Respondent thus urges this court to deny the claim as procedurally barred (*id.* at 10–11).

"A state court's rejection of a petitioner's [federal] constitutional claim on state procedural grounds will generally preclude any subsequent federal habeas review of that claim."  <u>Judd</u>, 250 F.3d at 1313.  In contrast, the AEDPA dictates that a federal court deferentially review a petitioner's claims that a state court has "adjudicated on the merits."  28 U.S.C. § 2254.  Here, the state court disposed of the claim by stating that it was "legally insufficient on its face," and Petitioner "failed to allege a specific act as required by <u>Strickland</u> and has failed to establish prejudice." (Ex. F at 239).  In disposing of the claim, the state court thus considered the sufficiency of the claim, focusing on the factors for determining whether the claim was sufficient to warrant relief under <u>Strickland</u>. There is no indication the court applied a state procedural.  The undersigned concludes the state court's disposition was an adjudication on the merits, and Petitioner's claim is not procedurally barred from federal review.  *See* <u>Borden v. Allen</u>, — F.3d —, 2011 WL 26855730, at *18–24 (11th Cir. July 12, 2011) (rejecting district court's conclusion that petitioner's claim was procedurally barred where state court ruled that petitioner's vague assertions and unsupported conclusions were insufficient to withstand summary dismissal because they failed to contain the required specificity and full disclosure of the factual basis, and holding that state court's disposition was an adjudication

on the merits; therefore, review of state court decision under deferential standard of AEDPA was appropriate).

           1.        Clearly Established Federal Law

The Strickland standard is set forth *supra*.

           2.        Federal Review of State Court Decision

As previously discussed, the state court determined that Petitioner's claim was legally insufficient to satisfy the Strickland standard (Ex. F at 239).

Initially, Petitioner has not identified any Supreme Court case that holds that a defense attorney's admission of a client's guilt to the media is per se deficient. Further, Petitioner failed to allege (either in state court or this federal proceeding) any facts regarding what Attorney Petersen told the reporter during the interview, when the interview occurred (whether it was before or after Petitioner decided to plead no contest), whether the interview was actually published, and, if so, when it was published. Petitioner thus failed to demonstrate that counsel's giving the interview was unreasonable, and that it actually affected his decision to plead no contest. Therefore, the state court's adjudication of his claim was not contrary to or an unreasonable application of Strickland.

    D.    Ground Four: "Defense counsel rendered ineffective assistance of counsel for failing to interview and investigate witness Jill Wright."

Petitioner asserts he informed Attorney Petersen that Ms. Jill Wright was available to give a statement, and she was willing to testify on his behalf at trial (doc. 1 at 8; doc. 2 at 19–21). He asserts Ms. Wright would have told counsel that the victim falsely accused Petitioner, and her motive for the false accusation was to make her boyfriend jealous and "pay back" Petitioner for allegedly ignoring her (doc. 2 at 20). Petitioner states he told counsel Ms. Wright's location (*id.*). He contends he was prejudiced by counsel's failure to investigate Ms. Wright as a witness, because had counsel done so, he would not have entered a no contest plea and instead would have proceeded to trial and relied upon her testimony as a defense (*id.*).

Respondent contends Petitioner has failed to demonstrate that the state court's adjudication of the claim was contrary to or an unreasonable application of Strickland (doc. 22 at 27–30). Respondent argues Petitioner admitted to counsel that he engaged in the sexual activity of which he was accused with the fifteen-year old victim; therefore, counsel could not ethically present perjured

testimony, namely, testimony from Ms. Wright that the victim fabricated the allegations (*id.*). Respondent additionally argues Petitioner could not establish ineffective assistance in light of Nix v. Whiteside, 475 U.S. 157, 175–76, 106 S. Ct. 988, 89 L. Ed. 2d 123 (1986), in which the Supreme Court held that a habeas petitioner cannot establish prejudice where the allegation is that the lawyer did not cooperate in presenting false testimony (*id.* at 30).

       1.     Clearly Established Federal Law

    The Strickland standard is set forth *supra*.  Additionally, in Whiteside, the Supreme Court held that counsel's duty of loyalty and to advocate his client's cause is limited to "legitimate, lawful conduct compatible with the very nature of a trial as a search for truth.  Although counsel must take all reasonable lawful means to attain the objectives of the client, counsel is precluded from taking steps or in any way assisting the client in presenting false evidence or otherwise violating the law." 475 U.S. at 166.

       2.     Federal Review of State Court Decision

    Petitioner raised this claim as Ground III in his first Rule 3.850 motion (Ex. F at 4).  The state court noted that this issue was addressed at the evidentiary hearing on Petitioner's motion to withdraw his plea, which resulted in the court's determination that Attorney Petersen properly represented Petitioner during the pre-trial process leading up to entry of the plea (*id.* at 239). Additionally, the state court found that Petitioner admitted his guilt to two fellow teachers/coaches, who would have testified during trial (*id.* at 239).  The court also noted that Petitioner admitted at his sentencing hearing that he engaged in sexual activity with the fifteen-year-old victim by stating he made a mistake and wished to "own up to that mistake" (*id.* at 240 n.13).  The court concluded Petitioner failed to demonstrate he was prejudiced by counsel's failure to interview, investigate, depose, and possibly present trial testimony from Ms. Knight (*id.* at 239–40).

    At the hearing on Petitioner's motion to withdraw his plea, Attorney Petersen testified Petitioner admitted to him that he had sexual relations with the victim twice on the evening she came to his home (Ex. B at 168).  Additionally, Petitioner admitted his guilt to the sentencing court (*see* Ex. B at 150, Ex. F at 133–36).  Given Petitioner's admissions, any statement or testimony by Jill Wright that the victim fabricated the allegations would have been untruthful.  Attorney Petersen's

failure to investigate or otherwise pursue this false evidence was not unreasonable.  *See* Williams v. Kemp, 846 F.2d 1276, 1281 (11th Cir. 1988) (where record reflected that defendant had told counsel he had written an incriminating note, counsel's decision not to produce contrary testimony merely fulfilled his ethical obligation) (citing Whiteside, 475 U.S. at 164–76).  Therefore, the state court's denial of Petitioner's claim was not contrary to or an unreasonable application of Strickland.

     E.     Ground Five: "Defense counsel rendered ineffective assistance of counsel for failing to investigate and introduce mitigating evidence at the sentencing hearing."

Petitioner asserts Attorney Petersen failed to present the following mitigation evidence at sentencing:  (1) he had never been arrested prior to this case, (2) he had a stable job and family support, and (3) the victim and at least one of her parents did not wish to pursue the charge (doc. 1 at 8–9; doc. 2 at 21).  Petitioner contends the trial court would not have imposed the maximum sentence if counsel had presented this evidence (doc. 2 at 21–22).

Respondent concedes Petitioner fairly presented this claim to the state courts in his first Rule 3.850 motion (doc. 22 at 31).  Respondent contends Petitioner is not entitled to relief because he failed to demonstrate that the state court's adjudication of the claim was based upon an unreasonable determination of the facts or contrary to or an unreasonable application of Strickland (*id.* at 31–31).

     1.     Clearly Established Federal Law

The Strickland standard is set forth *supra*.

     2.     Federal Review of State Court Decision

Petitioner raised this claim as Ground IV in his first Rule 3.850 motion (Ex. F at 4–5).  The state court concluded that the transcript of the sentencing hearing and defense counsel's sentencing letter with forty-three (43) attachments refuted Petitioner's claim that counsel failed to present mitigation evidence (*id.* at 240).

The record demonstrates that defense counsel filed a sentencing letter with forty-three (43) attachments, including (1) a letter from Petitioner with a "Personal Profile" that described his education, military experience, and teaching experience, and included a "Biography," (2) the victim's deposition testimony that neither she nor her mother wanted Petitioner to go to jail, (3) a

clinical report from a licensed mental health counselor,[11] (4) numerous letters from former athletes or their parents, (5) numerous letters from members of the community that knew Petitioner, (6) numerous letters from Petitioner's family members, and (7) the victim's deposition testimony that she was sexually active prior to the incident with Petitioner (Ex. F at 129–201).  Defense counsel argued that Petitioner qualified for a downward departure because he satisfied five of the twelve reasons for departure listed on the Criminal Punishment Scoresheet (*id.* at 1130).  He additionally argued for a downward departure based upon Petitioner's lack of any criminal history, his employment as a teacher and coach for three years, his support from former students, the community, and his family, the victim's willing participation in the sexual acts and her expressed desire that Petitioner not go to jail, and the fact that the crime was an isolated incident for which Petitioner was extremely remorseful (*id.* at 129–31).  Defense counsel repeated this argument at the sentencing hearing (Ex. B at 148–49).  Petitioner's pre-sentence investigation report and sentencing scoresheet, both of which were part of the record, reported no prior criminal record (Ex. B at 24, Ex. F at 204–10).  The transcript of the sentencing hearing demonstrates that the court considered all of this information in imposing sentence (*id.* at 147–48).  In light of this record, Petitioner failed to demonstrate that the state court's denial of his claim was based upon an unreasonable determination of the facts, or contrary to or an unreasonable application of <u>Strickland</u>.  Therefore, he is not entitled to federal relief on this claim.

      F.    <u>Ground Six:  "The scoring of 'sex penetration' points on Petitioner Burch's Florida Criminal Punishment Code scoresheet violation Petitioner Burch's Sixth Amendment right to a trial by jury."</u>

Petitioner states he received eighty (80) points on his sentencing scoresheet for "sex penetration," but he did not admit to this fact, nor was this fact found by a jury (doc. 1 at 9; doc. 2 at 22–42).  Petitioner states the charging document alleged the offense was committed by

---

[11] The report included the following findings:  (1) Petitioner was not a pedophile and did not present characteristics of an individual who was a sexual predator; (2) Petitioner displayed poor judgment regarding the victim; (3) Petitioner did not have an appropriate boundary structure with his students; (4) Petitioner displayed remorse and took full responsibility for the incident; (5) Petitioner was very concerned that his behavior harmed the victim; (6) Petitioner was not a threat to the community or others, and (6) Petitioner required continued treatment to learn and reinforce appropriate boundaries in his life (Ex. F at 144–45).

"penetration [] or union" (doc. 2 at 23).  He further states he entered a "no contest" plea without specifically admitting the offense occurred by penetration (*id.*).  He concedes he should have been assessed forty (40) points for "sex contact" (*id.* at 24).  Petitioner contends the assessment of the "sex penetration" points violated his Sixth Amendment right to a trial by jury, as recognized in Blakely v. Washington, 542 U.S. 296 (2004) (*id.* at 24–28).  He additionally contends the Florida Criminal Punishment Code is facially unconstitutional in light of Blakely (*id.* at 28–31).  Petitioner argues Blakely applies retroactively to his case (*id.* at 32–42).

Respondent concedes Petitioner presented this claim to the state court, and the court adjudicated the merits (doc. 22 at 41).  Respondent contends Petitioner is not entitled to relief, because several Circuit Courts of Appeal, including the Eleventh Circuit, have held Blakely is not retroactively applicable on collateral review (*id.* at 34).  Respondent additionally contends the Apprendi/Blakely line of cases do not apply to Petitioner's case, because the sentencing points at issue determined only the minimum sentence under Florida's criminal sentencing code, within an unenhanced statutory maximum (*id.* at 33–34 (citing Harris v. United States, 536 U.S. 545 (2002)).  Respondent acknowledges that Florida's previous sentencing code was similar in structure to the state system evaluated in Blakely (*id.* at 35).  However, the old Florida system was abolished in 1998, two years prior to Apprendi and six years prior to Blakely (*id.*).  Respondent contends the new Florida Criminal Punishment Code provides for the calculation of a sentencing range, with the minimum calculated by a point system, and the maximum being the statutory maximum (*id.*).  Respondent contends this new system departs from other systems, including the systems evaluated in Blakely and Cunningham v. California, 127 S. Ct. 856 (2007), in that there is no recommended or presumptive sentencing range with judicial authorization to increase the maximum based on additional judicial fact finding (*id.*).  Instead, the statutory maximum is the "true" maximum, which may be imposed based solely on the facts established by the conviction (*id.* at 35–36).  Therefore, Petitioner failed to show that the state court's adjudication of the claim was contrary to or an unreasonable application of clearly established federal law.

      1.      Clearly Established Federal Law

In Apprendi v. New Jersey, the Supreme Court held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000).  In Blakely v. Washington, the Court clarified that the "statutory maximum" for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant. 542 U.S. 296, 303, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004).  In United States v. Booker, the Supreme Court extended its holding in Blakely to the United States Sentencing Guidelines, holding that the mandatory nature of the federal guidelines rendered them incompatible with the Sixth Amendment's guarantee to the right to a jury trial.  543 U.S. 220, 243–44, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005).  Finally, in Cunningham v. California, the Supreme Court extended the reasoning of Apprendi, Blakely, and Booker to California's determinate sentencing law (DSL).  549 U.S. 270, 127 S. Ct. 856, 166 L. Ed. 2d 856 (2007).  Under California's sentencing plan, the crime in question carried a lower term of 6 years, a middle term of 12 years, and an upper term of 16 years. Id., 549 U.S. at 275.  The judge was required to impose the middle term unless he found one or more aggravating facts at the sentencing hearing. Id.  As in Booker, such aggravating facts were found by the court based on the preponderance of the evidence, and not by a jury. Id. at 288.  Cunningham received the higher sentence based on the judge's fact finding, and the Supreme Court reversed. Id.  The Court reasoned that while Cunningham's sentence was below the statutory maximum, the DSL effectively made the middle term the mandatory term, much as was the case with the federal sentencing guideline scheme struck down in Booker. Id.  The Court therefore held that the judge's fact finding deprived Cunningham of his Sixth and Fourteenth Amendment right to a jury trial. Id. at 293.

2.    Federal Review of State Court Decision

Petitioner raised this issue in his amendment to his Rule 3.800(a) motion and his simultaneously filed second Rule 3.850 motion (Ex. J at 4–33).  In the state circuit court's written order denying the claim, the court cited Apprendi and Blakely as setting forth the applicable standard for analyzing Petitioner's constitutional claim (id. at 46).  The court determined that Petitioner's sentence did not exceed the maximum set forth in the Florida Statutes (id.).  The court

further determined that the Florida Criminal Punishment Code did not create any "wandering" or "floating" statutory maximums (*id.*). Therefore, Petitioner's sentence did not violate <u>Apprendi</u> or <u>Blakely</u> (*id.*). The court additionally concluded that Florida's sentencing scheme was not unconstitutional under <u>Blakely</u> (*id.*). The First DCA affirmed the lower court's decision without written opinion (Ex. M).

As previously discussed, when faced with a state appellate court's summary affirmance of a trial court's decision, the "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it. *See* <u>Gill</u>, 633 F.3d at 1287 (citing <u>Harrington</u>, 131 S. Ct. at 786). The federal court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court. *See* <u>Harrington</u>, 131 S. Ct. at 786; *see also* <u>Gill</u>, 633 F.3d at 1292 (holding that the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).

Initially, the Supreme Court has not held that <u>Blakely</u> is retroactively applicable on collateral review. Furthermore, the Eleventh Circuit held that <u>Booker</u>, which expanded <u>Blakely</u> by applying it to the federal sentencing guidelines, is not retroactively applicable to cases on collateral review, *see* <u>Varela v. United States</u>, 400 F.3d 864, 868 (11th Cir. 2005); and the Eleventh Circuit applied this holding to deny habeas relief to a petitioner claiming <u>Blakely</u> error. *See* <u>Michael v. Crosby</u>, 430 F.3d 1310, 1312 n.2 (11th Cir. 2005). Therefore, Petitioner is not entitled to relief on his <u>Blakely</u> claim.

Additionally, to the extent Petitioner asserts an <u>Apprendi</u> claim that the state court increased his sentence beyond the prescribed statutory maximum based upon a judicial finding of sexual penetration, he failed to show a constitutional violation. Respondent correctly argues that prior to Petitioner's offense conduct, Florida changed its sentencing scheme by adopting the Criminal Punishment Code ("CPC"), codified at Florida Statutes §§ 921.002–27 (1998). The CPC replaced

the structure of Florida's previous guidelines, which allowed sentence guideline departures based on judicial findings, very much like the guidelines struck down in <u>Blakely</u> and <u>Booker</u>. Instead, the CPC provides for the creation of a sentencing score which operates as the minimum or base sentence. Upward departures, where the court was required to make factual findings to justify increased sentences, were abolished. Instead, the CPC gives the sentencing court absolute discretion to impose a sentence at or above the scored minimum sentence, up to and including the statutory maximum, without any additional fact finding. *See* Fla. Stat. § 924.0024(2) (1998). This is the law under which Petitioner was sentenced. Under the CPC, Petitioner's plea authorized the court to impose a sentence that was equal to or greater than the sentence indicated by the sentencing score (in this case 94.5 months, or just under eight years), up to and including the statutory maximum for the crime, without making any factual findings. The statutory maximum sentence for lewd or lascivious battery, a second degree felony, was fifteen (15) years, *see* Fla. Stat. §§ 775.082(3)(c); 800.04(4) (1999), which is the sentence Petitioner received.

There is no clearly established Supreme Court precedent to support Petitioner's argument that a violation of the Sixth Amendment occurs when judicial fact-finding increases the lowest permissible sentence, but the sentence is still within the statutory maximum. *See* <u>United States v. Harris</u>, 536 U.S. 545, 560–69, 122 S. Ct. 2406, 153 L. Ed. 2d 524 (2002) (judicial fact-finding may be used to increase mandatory minimum sentence without violating the Sixth Amendment). The holding of <u>Cunningham v California</u>, *supra*, is inapplicable here because the sentence score in Florida is unlike California's, where the score mandates a middle term and permits a higher sentence only when additional aggravating facts are found, originally by the judge but now by a jury. Because Petitioner has failed to show that the state court's adjudication of his federal claim was contrary to or an unreasonable application of clearly established federal law, he is not entitled to federal habeas relief on Ground Six.

## V.    CERTIFICATE OF APPEALABILITY

As amended effective December 1, 2009, § 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing

required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483–84, 120 S. Ct. 1595, 1603–04, 146 L. Ed. 2d 542 (2000) (explaining how to satisfy this showing) (citation omitted).  Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of new Rule 11(a) provides:  "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED**:

1.	That the petition for writ of habeas corpus (doc. 1) be **DENIED**.

2.	That a certificate of appealability be **DENIED**.

At Pensacola, Florida, this 15th day of August 2011.


/s/ Elizabeth M. Timothy
**ELIZABETH M.  TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**



**NOTICE TO THE PARTIES**

**Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  _See_ 28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).**